## Cook et al. *v.* Miller Transport Company, Inc., Appellant.

Argued May 28, 1935. Before SIMPSON, KEPHART, SCHAFFER, DREW and LINN, JJ.

*Bernard J. Myers,* with him *Ward C. Henry,* of *Swartz, Campbell & Henry,* for appellant.

*Samuel J. Becker,* for appellees.

Per Curiam, June 29, 1935:

Defendant appeals from the judgments entered on two verdicts of $8,500 and $3,000 respectively, the first in favor of Harry J. Cook, the minor who was injured, and the second in favor of Harry L. Cook and Meta Cook, his parents, who were also his next friends. The record is free from error and the judgments must, therefore, be affirmed.

As shown by the statement of the questions involved, to which the appeal is necessarily limited (Keller v. N. J. Fidelity & Plate Glass Ins. Co., 306 Pa. 124), but two questions are presented for our consideration: (1) Was there sufficient evidence of defendant's negligence to justify the submission of that question to the jury? and (2) Was the judgment of $3,000 in favor of the parents and next friends, so grossly excessive as to require us to set it aside, wholly or partially?

Upon the first of these questions the court below, in its opinion, correctly stated the facts proved at the trial to be as follows: "On February 15, 1933, at about 7:33 o'clock in the evening, the rear wheel of defendant's truck [then being operated on its business] ran over the foot of Harry J. Cook [the minor plaintiff], at the intersection of Clearfield and Stouten Streets in the City of Phila-

delphia. . . . Clearfield Street runs east and west and is 34 feet from curb to curb. Stouten Street runs into Clearfield Street from the north, but does not continue to the south. On the south side of Clearfield Street, about on a line with the west curb of Stouten Street is an electric light which extends over Clearfield Street.

"At the time in question, the minor plaintiff wished to cross Clearfield Street from south to north and started into Clearfield Street within a few feet of the electric light pole, which would be on a line with the west sidewalk of Stouten Street. When he got about five feet from the curb, he saw defendant's truck coming from the west at a distance of 100 feet and stopped in order to let the truck pass. The street was icy, slushy and slippery. The truck was driving a little to its left-hand [or wrong] side of Clearfield Street and at Stouten Street it encountered a westbound automobile. In order to give this westbound automobile clearance, defendant's truck swerved to the right [in order to get on its own side of the street], probably after the front had passed the minor plaintiff. The front of the truck cleared the plaintiff by about five feet, but the rear wheel either swerved or skidded toward him, so that it ran over his foot. The truck was of the trailer type, of a total length of 35 feet, and was proceeding at a speed of from 28 to 30 miles an hour. . . .

"If the facts were as above stated, the jury would be fully justified in finding that the driver of defendant's truck was negligent. The minor plaintiff was in plain sight under an electric light. He was seen by two occupants of the automobile proceeding in a westerly direction. There was no reason why the driver of defendant's truck could not have seen him. To drive a 35-foot trailer at 28 to 30 miles an hour on a slippery street in close proximity to a standing child, with a resulting swerve or skid so that the child is injured, may well be deemed negligence."

With this conclusion we agree. In Prinz v. Lucas, 210 Pa. 620, and McGettigan v. Quaker City Auto Co., 48 Pa.

88

Superior Ct. 602, it is held that drivers of automobiles
are chargeable with knowledge that their cars may skid
or slue, and must guard thereagainst, if this may result
in injury to others on the highway. In Griffith v. V. A.
Simrell & Son Co., 304 Pa. 165, we said: "the wet and
slippery condition of the street [as it was also here] must
be taken into consideration by the driver, and he is bound
to reduce his speed to the point where he can control the
movements of the car," and he must also otherwise exer-
cise the due and necessary care demanded by that condi-
tion of the street. As stated by appellees, the facts here
are as follows:

"An examination of the evidence discloses that the de-
fendant's truck was being operated a few feet over on its
left side of the center line, and the driver of the truck
knew or should have known that if another vehicle ap-
proached him on the opposite side of the street near the
center line, it would be incumbent upon him to turn to the
right [in order to get on his own side of the street and]
to avoid a collision. This is what actually happened in
the instant case. The evidence further showed that the
street was icy, slushy and slippery, . . . that the speed
of the truck at the point of the accident was thirty miles
an hour, that the point of the accident was on a crossing,
. . . [and] that the speed of the truck was accelerated
as it turned out and passed the car approaching from the
east. Under this evidence, the conclusion is inescapable
that the skidding which resulted in the minor plaintiff's
injury was caused by a chain of negligent acts on the part
of the defendant's driver."

To all this appellant's answer is that its driver did not
see the minor plaintiff, and hence acted as he did in igno-
rance of the peril thereby caused to plaintiff. But, if he
did not see the boy, it was due to gross inattention to
duty, since, as already stated, the boy was on the line of
Stouten Street "in plain sight" under an electric light,
where an attentive person, as the truck driver was then
and there required to be, must have seen him had he

looked, as it was his duty to do. A neglect of one duty can never excuse liability growing out of the failure to perform another, when, as here, the liability would not have arisen had the earlier duty been performed.

In reference to the $3,000 judgment in favor of the parents, the court below said: "In regard to the parents, there have been expenditures to date of $114.50. Further expenditures, in the way of artificial limbs, etc., were estimated to be $535, making a total of $649.50. In addition, the boy's earning power will be reduced between the ages of 16 and 21, for which the parents are entitled to compensation. Two thousand three hundred and fifty dollars on this account may be a little high, but it is not such as to shock our conscience, particularly in view of the fact that in so far as the boy is concerned a much higher verdict would have been justified. We would have preferred a verdict of $1,500 for the parents and $9,500 for the boy, but the jury has stated the figures and we cannot say that they have been unreasonable. The total of $11,-500 is certainly not excessive."

Under the facts of this case our consciences are not shocked, nor is a clear abuse of discretion shown, and, unless they do appear, we do not reverse or reduce an alleged excessive judgment: Knobeloch v. Pgh., etc., Ry. Co., 266 Pa. 140; King v. Equitable Gas Co., 307 Pa. 287.

The judgments of the court below are affirmed.