## Richardson, Appellant, *v.* Patterson.

496

Argued September 25, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Harry Savage*, with him *Marvin D. Power, Clarence L. Shaver, Richter, Lord & Farage, Margiotti & Casey* and *Shaver & Heckman*, for appellant.

*Frank R. Coder*, with him *Frank R. Coder, Jr.*, for appellees.

OPINION BY MR. JUSTICE JONES, November 13, 1951:
This is an appeal from a refusal of the court below to take off a compulsory nonsuit entered at trial as to both defendants, a husband and wife. The plaintiff sued to recover damages for injury to himself and to his automobile as a result of a collision with an automobile owned by the husband-defendant but driven by the wife who was accompanied by their two minor children. The husband was not present.

The plaintiff's theory in joining the husband as a party defendant was that the wife was his agent or servant and was driving the automobile on his business at the time of the accident. The defendants, by their answer, denied the allegations of the wife's agency and the husband's control; and, the plaintiff offered no proof of either allegation. The only evidence concerning the husband was that he was the sole owner of the automobile involved in the collision with the plaintiff's

car. The nonsuit as to the husband was therefore properly entered. In cases not involving business automobiles we have consistently held in a long line of decisions, as was recognized in *Klein v. Klein,* 311 Pa. 217, 219, 166 A. 790, that " 'In an action to recover damages for injuries resulting from an automobile accident, it is necessary for plaintiff to prove not only that defendant was the owner of the car and that the driver was his servant, but that such servant was at the time engaged in the master's business.' " The *Klein* case pertinently added that "This rule applies with peculiar force when the parties are husband and wife."

The evidence offered by the plaintiff in an effort to hold the wife-defendant liable disclosed the following set of circumstances. About 2:45 p.m. on a day late in November, the plaintiff was driving his automobile westwardly on the Pennsylvania Turnpike in the vicinity of Somerset. As stated in the appellant's history of the case, and not contradicted, the Turnpike consists of two concrete highway lanes, one for eastbound and the other for westbound traffic, each lane being twenty-four feet wide and separated by a ten foot medial strip. The day was cold and gusty with snow flurries. There were some ice patches on the highway. The plaintiff said the visibility "appeared to be fair"; his witnesses described the weather as murky. A mile or two before reaching the Somerset interchange, the plaintiff had slowed down from his normal speed of thirty-five miles an hour because of the appearance of "patches of ice". Shortly after that, the skidding of a car up ahead of him, which had just passed him, caused the plaintiff to slow down to almost a stop about a mile west of the Somerset interchange and to pull over to the right and onto the berm with his righthand wheels. While the plaintiff was in that position, a car driven by the defendant, Mrs. Patterson, proceeding in the opposite direction in the east-

bound lane, crossed the medial strip and crashed into the front of the plaintiff's car, causing the damages to him and his automobile for which he sued. At the place of the accident the Turnpike was level and straight for a considerable distance in both directions. In addition to proving the presence of Mrs. Patterson's car in the wrong highway lane at the point of collision, the plaintiff also proved that it was there as the result of having skidded. Two of his witnesses who had followed Mrs. Patterson's car for a distance of ten miles testified that they were driving very slowly, fifteen to twenty miles an hour. The plaintiff offered no evidence from which the jury could find that the skidding of Mrs. Patterson's car was the result of negligence on her part. In the evidentiary situation thus presented at the conclusion of the plaintiff's case, the defendant moved for, and the trial judge entered, the compulsory nonsuit which the court later refused to remove.

Had the plaintiff been content with proving that the collision occurred in the westbound lane where Mrs. Patterson's car, proceeding eastwardly, should not have been, the burden would have been upon the defendant to offer exculpatory proof if she wished to be found not guilty of causative negligence. The presence of an automobile on the wrong side of a highway is prima facie evidence of the driver's negligence: *Miles v. Myers*, 353 Pa. 316, 318, 45 A. 2d 50. But, here, the explanation of how the Patterson car came to be in the wrong traffic lane was supplied by the plaintiff himself when he offered evidence that it was the result of skidding. It then became the duty of the plaintiff to offer testimony from which the jury could infer that the skid resulted from negligence on the part of the driver. In *Johnson v. American Reduction Co.*, 305 Pa. 537, 541, 158 A. 153, Mr. Justice DREW, speaking for this court in affirming a judgment n.o.v. for lack of negligence, said "The skidding of a vehicle does

not of itself establish or constitute negligence. It is encumbent upon the plaintiff to prove the skidding resulted from the negligent act of the defendant; otherwise he is absolved from the consequences: [citing cases]." That rule has been frequently recognized and reiterated.

All that the evidence in this case showed as to the circumstances attending the collision was that the road was level and straight for a considerable distance in either direction; that there were patches of ice on the roadway and some snow; that occasional gusts of wind whipped up the snow; that the visibility was fair; that Mrs. Patterson had been proceeding at a speed of twenty miles an hour for a distance of ten miles; and that her car skidded into the plaintiff's. The learned judge of the court below correctly appraised the evidentiary situation as follows: "[A] minute examination of all the testimony, in a light most favorable to the plaintiff, compels the conclusion that plaintiff has proved nothing more than an automobile collision as the result of skidding of defendant's automobile; there is not a scintilla of evidence of negligence in the operation of her vehicle on the part of defendant Gladys Patterson; no circumstances were shown upon which we could say to the jury that they could logically find or reasonably infer negligence on the part of this defendant; had we submitted the case to the jury we would in essence have been permitting the jury to guess or speculate as to any negligence on the part of this defendant and that we are neither willing nor permitted to do."

There was nothing in the managing of the defendant's car, prior to the skidding and the consequent collision, to indicate a lack of ordinary care in its operation: see *Simpson v. Jones*, 284 Pa. 596, 598, 131 A. 541. There was no evidence of excessive speed or that the skidding was the result of carelessness on the part

of the driver even though there were "patches of ice" along the highway: see *Wertz v. Shade,* 121 Pa. Superior Ct. 4, 8, 182 A. 789. It is true that, where there are unusual conditions, the question as to whether or not the speed of the defendant, regardless of the precise rate, was excessive in the circumstances may become a question for the jury: see *Eisenhower v. Hall's Motor Transit Company,* 351 Pa. 200, 205, 40 A. 2d 458. But, the presence of ice patches on a straight and level section of an improved highway does not constitute a condition so unusual as to require that a jury be permitted to guess that an ordinary passenger car travelling at fifteen to twenty miles an hour was being operated at a negligent speed. In *Hatch v. Robinson,* 99 Pa. Superior Ct. 141, 145, Judge BALDRIGE spoke for the Superior Court as follows, "It cannot be said, however, that operating an automobile in the open country at the rate of twenty-five to thirty miles an hour is greater than is reasonable and proper where there is no congested traffic, *although there may be an occasional presence of ice or mud"* (Emphasis supplied). See also *Wertz v. Shade,* supra.

As skidding, in and of itself, is not evidence of negligence, obviously something additional must be shown before it can justifiably be found to have resulted from the operator's carelessness. Compliance with that requirement in the cases cited and relied upon by the plaintiff readily distinguishes them from the present. In *Davin v. Levin,* 357 Pa. 554, 556, 55 A. 2d 364, the defendant was driving his truck on trolley tracks on a wet and slippery day at a speed of twenty-five miles per hour. The negligence which caused the skidding in that case derived from the fact, as recognized in the opinion for the learned court below whereon we affirmed, that ". . . it requires no argument to convince anybody who drives a car that one who drives on wet rails can anticipate trouble whether he elects to stay

on them or attempts to get off them." In *Schulz v. Reading Transportation Company*, 354 Pa. 373, 374-375, 47 A. 2d 213, the operator of the bus, which skidded, himself described the road as being "very slippery, icy and sleety; it was partly raining and snowing and slushy." Descending a "heavy grade", the bus "hit" a sharp curve, with which the driver was well acquainted, and "the bus went into a skid." In *Eisenhower v. Hall's Motor Transit Company*, supra, the defendant's operator was driving a tractor-trailer which had been loaded in such a manner as to lessen the effectiveness of the brakes and restrict the steering. Driving down a curving hill in high gear at a speed of twenty to thirty miles an hour, the operator, becoming aware of the impairment in the steering, jammed on his brakes and the skid followed. The question of the operator's negligence was properly for the jury in both of the cases last cited. The necessity of additional proof in order to constitute skidding negligence is well illustrated by a comparison of two actions growing out of the same accident: see *Master v. Goldstein's Fruit & Produce, Inc.*, 344 Pa. 1, 23 A. 2d 443; and *Kotlikoff v. Master*, 345 Pa. 258, 27 A. 2d 35. There was no such additional evidence in the instant case.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE LADNER:

I agree that the non-suit was correctly entered as to the husband defendant but I do not agree that a non-suit was properly entered with respect to the wife defendant.

To my mind where a motor vehicle crosses a dual highway separated by a center strip and crashes into another motor vehicle travelling on its correct side, the question of negligence is for the jury because whether the accident was unavoidable in this case due to an

uncontrollable skid became a matter of *defense*. The majority concedes that had the plaintiff merely proved that the collision occurred on the west bound lane where defendant's car should not have been, the burden would have been upon the defendant to offer exculpatory proof. But the settled rule of law is that on a motion for a non-suit the court must take a view of the evidence most favorable to the plaintiff: *Szukics v. Ruch,* 367 Pa. 646, 81 A. 2d 903 (1951). The plaintiff, at one point of his testimony said, "This car came over across the medial strip and into my car, crashed into my car." This statement standing alone the majority admits would have entitled him to go to the jury. How can it be any less for the jury because he said at another point, the defendant's car "skidded *or* crossed over the medial strip" into the west bound lane of traffic into his car. Or because one of his witnesses, Sumey, testified when asked where and how the accident happened, "West of Somerset, I don't know the distance . . . a car skidded across from the east bound traffic lane and went into a skid and apparently struck another car. It was murky. *I couldn't be sure of too much of anything.*"

Where in one part of a plaintiff's testimony he is entitled to have the case submitted to the jury, and in another part he is not, it is for the jury to reconcile the conflicting statements and determine which shall prevail: *Greene v. Philadelphia,* 279 Pa. 389, 392, 124 A. 134 (1924); *Bisaillon v. P. R. T.,* 84 Pa. Superior Ct. 153, 156 (1924). The same rule applies where the testimony of a witness conflicts with that of the plaintiff: *O'Farrell v. Mawson et al.,* 320 Pa. 316, 182 A. 538 (1936); *Cardone v. Sheldon Hotel Corp.,* 160 Pa. Superior Ct. 193, 195, 50 A. 2d 700 (1941).

Sumey also testified the drivers of both cars were rendered unconscious by the force of the impact. He further testified that they had been travelling behind

the defendant's car a distance of about 500 yards, that they were travelling about 20 miles an hour and that they had followed defendant's car for about ten miles. Asked whether the defendant's car had been on the inside or outside lane of the east bound part of the highway, he answered, "The inside, the right lane, I am not sure of that either." But he did say his own car was on the right lane. From this the jury might infer because of the witness's prior testimony that he had been following defendant's car, that the defendant's car just before the accident was also in the right or outside lane of the east bound way. Plaintiff's other witness was Painter, the driver of the car in which Sumey was a passenger. He testified he was intent on driving when Sumey called his attention to something up the road. He glanced up and saw defendant's car moving across the center strip into the west bound lane and then the collision took place. This witness said he was driving his own car very slow, "maybe 15 miles an hour."

The learned court below reviewed many of the skid cases and drew from them the proper governing rule of law which is that: Proof of skidding of a motor vehicle does *not of itself* constitute negligence though circumstances may be such as to impose on the owner or driver of the skidding vehicle the burden of proving there was no negligence in the operation thereof. I agree with this statement of the rule which was announced in *Griffith v. V. A. Simrell & Son Co.,* 304 Pa. 165, 155 A. 299 (1931), and constantly reiterated in the numerous skidding cases, which I refer to in a footnote appended at the end of this opinion. Both in that case and in *Cook v. Miller Transport Co., Inc.,* 319 Pa. 85, 179 A. 429 (1935), we also said, "The wet and slippery condition of the street must be taken into consideration by the driver and he is bound to reduce his speed to the point where he can control the movement of the

car." I think the learned court erred in the application of these principles to the facts as we have reviewed them. While it is true that a motor vehicle's skid may under some circumstances be unavoidable yet it is equally true as the cases testify that a skid may be caused by negligent operation such as, e.g., a speed too great under the conditions of. weather, the road, the location, or a too sudden or improper application of the brakes.

Here we have a case with intervals of falling snow, poor visibility and icy patches on the road, in which the defendant's car travelled in its skid from the right hand lane of east bound portion of the highway, a distance of at least 40 feet clear across the center strip and collided with a car almost at rest with such violence as to render both drivers unconscious. From these facts the jury, irrespective of the speed estimates of the witnesses,[1] would have had the right to infer that the driver of the car which crossed the medial strip from the east bound roadway to the extreme side of the other was travelling at a speed too great under the circumstances in violation of Section 1002 of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 P.S. 501. This section requires a person driving a vehicle on the highway to "drive the same at a careful and prudent speed, not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and of any other restrictions or conditions then and there existing." As well said by Mr. Justice HORACE STERN in *Eisenhower v. Hall's Motor Transit Co.*, 351 Pa. 200, at page 205,

---

[1] Mere estimates of speeds of moving objects we have frequently held must necessarily be for the jury: *Miller v. Measmer*, 353 Pa. 18, 20, 44 A. 2d 284 (1945) and cases gathered by Mr. Justice ALLEN STEARNE in *Cunningham v. Pa. R. R. Co.*, 352 Pa. 571, 575, 43 A. 2d 825 (1945).

40 A. 2d 458 (1945), ". . . what may be a permissible rate of speed at one, time and place and under given circumstances may be wholly improper on other occasions and under different circumstances, and in cases where, as here, unusual conditions existed, it has been uniformly held that the question as to whether the speed was excessive was for the jury: . . ." Thus even if the speed of 20 miles an hour were an accurate estimate it was still for the jury to say whether the speed was not too great under the circumstances.

With but few exceptions, cases where the defendant's vehicle skidded into a car proceeding in the opposite direction on the other side of the street, we have held to be for the jury. Certainly we have been able to find no case in which a nonsuit was ever entered where a vehicle skidded clear across a dual highway over a division strip into a car on the extreme opposite lane of travel.[2]

---

[2] The following cases in which defendant's car skidded across the highway and struck plaintiff's car on the opposite side were all held to be for the jury: *Szvitih v. Doernte*, 360 Pa. 415, 61 A. 2d 823 (1948); *Davin v. Levin*, 357 Pa. 554, 55 A. 2d 364 (1947); *Miles v. Myers*, 353 Pa. 316, 45 A. 2d 50 (1946); *Mulheirn v. Brown*, 322 Pa. 171, 185 A. 304 (1936); *Griffith v. V. A. Simrell and Son Co.*, 304 Pa. 165, 155 A. 299 (1931); *Laessig v. Cerro*, 149 Pa. Superior Ct. 155, 27 A. 2d 731 (1942); *Matzasoszki v. Jacobson*, 122 Pa. Superior Ct. 180, 186 A. 227 (1936); *Corse v. Ferguson*, 118 Pa. Superior Ct. 606, 180 A. 65 (1935); *Bernstein v. Smith*, 86 Pa. Superior Ct. 366 (1926).

Other cases in which the skidding was held to be for the jury are: *Schulz v. Reading Trans. Co.*, 354 Pa. 373, 47 A. 2d 213 (1946), where bus on which plaintiff's decedent was a passenger skidded 150 feet into and broke a telephone pole ten inches in diameter while travelling 15 to 20 miles an hour on slippery highway that curved down grade; *Miller v. Measmer*, 353 Pa. 18, 44 A. 2d 284 (1945), where defendant skidded, turning into an intersection with street icy and slippery at 30 miles per hour according to plaintiff's evidence; *Eisenhower v. Hall's Motor Transit Co.*, 351 Pa. 200, 40 A. 2d 458 (1945), where a tractor trailer skidded a

I would reverse the judgment of non-suit as to the defendant Gladys Patterson, and award a new trial.

---

distance of 80 feet while rounding a curve and crashed into a tree driving motor through dash board; *Cirquitella v. Callaghan, Inc.*, 331 Pa. 465, 200 A. 588 (1938), where defendant following funeral procession going 8 to 10 miles an hour on slippery street skidded into the car in front when it stopped; *Cook v. Miller Transport Co., Inc.*, 319 Pa. 85, 179 A. 429 (1935), where defendant's truck going 28 to 30 miles an hour on icy, slippery street skidded into a minor plaintiff in process of crossing street; *Luderer v. Moore*, 313 Pa. 71, 169 A. 106 (1933), where defendant coasting down hill at 40 miles an hour on wet road skidded into bank of road; *Fitzpatrick v. Pralon C. & D.*, 129 Pa. Superior Ct. 437, 195 A. 644 (1937), where defendant's truck, without chains, skidded down an icy hill while going 30 to 40 miles per hour, striking plaintiff's car at an intersection; *Smith v. Gross*, 113 Pa. Superior Ct. 568, 173 A. 478 (1934), where defendant, to avoid an approaching car on a two-lane highway, jammed on his brakes to get behind the car he was passing, highway wet and slippery, guest passenger injured; *Goldenberg v. P. R. T. Co.*, 112 Pa. Superior Ct. 163, 170 A. 360 (1934), where bus driver while travelling 25 miles per hour put on his brakes in middle of intersection and rear end of bus skidded into plaintiff's car which had stopped at the intersection; *McGettigan v. Quaker City Auto Co.*, 48 Pa. Superior Ct. 602 (1912), where rear of defendant's auto in negotiating a corner skidded and struck child on sidewalk.

The following cases were held not to be for the jury: *Master, Admrx., v. Goldstein's Fruit & Produce, Inc.*, 344 Pa. 1, 23 A. 2d 443 (1942), defendant's truck skidded into path of car driven by plaintiff's decedent. No ice on highway except where accident occurred. Speed of defendant's truck 15 to 20 miles an hour (But in *Kotlikoff v. Master, Admrx.*, 345 Pa. 258, 27 A. 2d 35 (1942), which arose out of the same accident, and with the additional evidence that the truck was going 45 to 50 miles an hour and that the ice extended from 50 feet west of the crest of the hill to a point somewhere beyond the bottom of the hill, this court held the question of negligence to be for the jury) ; *Lithgow, Exrx., v. Lithgow*, 334 Pa. 262, 5 A. 2d 573 (1939), defendant skidded on loose gravel going around curve, no other evidence; *Dahlman v. Petrovich*, 307 Pa. 298, 161 A. 550 (1932), plaintiff attempted to go up a snowy hill and could not make it. Defendant, after passing plaintiff at-

tempted to go up the hill. He also could not make it and slid back into plaintiff's car hitting him as he was putting on chains; *Simpson et ux., v. Jones,* 284 Pa. 596, 131 A. 541 (1925), defendant's car after going around a curve at 25 miles an hour skidded and hit a culvert throwing car over a bank; *Wertz v. Shade,* 121 Pa. Superior Ct. 4, 182 A. 789 (1936), defendant's car skidded into a truck in which plaintiff was sitting. No evidence of excessive speed; *Hatch v. Robinson,* 99 Pa. Superior Ct. 141 (1930), defendant's car going at 30 miles an hour skidded into path of plaintiff's car. No evidence that there was a general condition of icy road.